**LEVINGSTON SHIPBUILDING COMPANY, et al., Appellants,**

v.

**INLAND WEST CORPORATION and Inland Shipyard Corporation, Appellees.**

**No. 09 83 234 CV.**

Court of Appeals of Texas, Beaumont.

Feb. 28, 1985.

Rehearing Denied March 21, 1985.

John Cash Smith, Orange, Edward H. Green, Beaumont, for appellants.

Ralph S. Carrington, Houston, for appellees.

OPINION

DIES, Chief Justice.

Levingston Shipbuilding Company, as plaintiff below, filed suit against Inland

West Corporation, as defendant below, for damages and other relief, alleging that defendant had disclosed trade secrets, entrusted to it by plaintiff, to others. Inland West Corporation was an engineering firm which did work for Levingston. Defendant, Inland West Corporation, and its projected shipyard company, Inland Shipyard Corporation, filed an "Original Counterclaim and Third-party Complaint" based upon "libel, abuse of process, and interference with contractual relations", brought in Edward Earl Paden, the principal owner of Levingston, and alleged, inter alia, that plaintiffs had filed their lawsuit to eliminate defendant from obtaining a bond issue and financial backing in order to establish another shipbuilding concern "in the Orange area."

After a lengthy jury trial, the following findings were made by the jury: (The numbers used in this opinion correspond to the numbers of the Special Issues in the trial court.)

(1) The jury failed to find that Inland West possessed trade secrets of Levingston.

(2) This issue, being conditional on a "yes" answer to No. 1, was unanswered.

(3) Same as 2 above.

(4) Same as 2 and 3 above.

(5) Same as 2, 3, and 4 above.

(6) That E.E. Paden either ordered or authorized the communication of the statements in the petition which Levingston filed against Inland West to the Orange and Beaumont news media.

(7) That the statements in the petition were communicated to the news media by representatives of Levingston.

(8) They failed to find that Paden's ordering the communication of the statements in the petition to the news media was referable to a duty he owed Levingston, of which he was an owner and an officer.

(9) They failed to find such ordering was referable to a duty owed to Levingston Industries, Inc.

(10) They found that certain statements in Levingston's petition were materially false.[1]

(11) That each paragraph in Levingston's petition (summarized in the footnote) tended to impeach the honesty, integrity, virtue and reputation of Inland West, thereby exposing Inland West to public hatred, contempt, ridicule and financial injury.

(12) That at the time Paden ordered the communication of such statements to the news media, a person of ordinary care would have known they were materially false.

(13) That a person of ordinary prudence should have known that such statements would injure or impeach the honesty, integrity, virtue or reputation of Inland West and expose it to public hatred, contempt, ridicule or financial injury.

(14) That by clear and convincing evidence, Paden acted with actual malice.

(15) That Paden authorized the seeking of damages by Levingston from Inland West in an amount of $25,000,000 or more.

(16) That Paden ordered the amount of the damages be communicated to the news media.

(17) Failed to find that such authorization by Paden was referable to a duty he owed Levingston.

(18) Failed to find that such authorization by Paden was referable to a duty he owed Levingston Industries.

(19) A person of ordinary prudence would know there were no facts supporting damages of $25,000,000.

---

1. The statements are herewith summarized:
   A. Defendant (Inland West) converted engineering drawings of plaintiff. B. Defendant intends to disclose these secrets to U.S. Steel Corp. to construct drilling vessels in competition with plaintiff, Levingston. C. Defendant is tracing the engineering drawings, removing the inscription showing they belong to plaintiff, Levingston, and then delivering the drawings to U.S. Steel Corp. D. The value of the trade secrets is $10,000,000. E. Inland's conduct was willful and malicious.

(20) That a person of ordinary prudence would know such a communication to the media would cause financial harm to Inland West.

(21) That it was done through malice.

(22) That on July 31, 1981, Paden knew Inland West and/or Inland Shipyard was developing a shipyard.

(23) That on such date there was a reasonable assurance Inland West would have received a fabricating contract from U.S. Steel Corp. for a sum of $400,000.

(24) That Paden knew in suing Inland West for $25,000,000 and communicating it to the media he would impede, stop, or hinder Inland Shipyard's development as a viable or going shipyard.

(25) That the same was done with the purpose of intentionally impeding, stopping, or hindering Inland Shipyard's development and without just cause.

(26) That Paden's acts of A. communicating untrue statements to the news media, and B. seeking $25,000,000 in damages and communicating such fact were the proximate cause of Inland West's losing its investment in Inland Shipyard.

(27) That Inland West's loss in the shipyard was: A. $465,043.59 for Paden's ordering of untrue statements to the news media, and B. $465,043.59 for seeking damages of $25,000,000 and communicating it to the news media.

(28) That such conduct proximately caused Inland Shipyard's failure to receive the U.S. Steel contract.

(29) That the profit in such contract would have been $100,000.

(30) That Inland West's damages for (a) impairment of professional reputation, (b) impairment as a creditworthy borrower, and (c) public ridicule among its competitors was $3,000,000.

(31) That Inland West's damages for impairment to its financial reputation as a result of the seeking of damages of $25,000,000 and the communication thereof to the news media, was $2,000,000.

(32) That exemplary damages of $2,000,000 against each of the parties listed should be assessed for the untrue stories maliciously communicated to the news media.

(33) That $4,000,000 against each of the parties listed should be assessed as exemplary damages for authorizing a suit for $25,000,000 and communicating it to the news media.

After notice and hearing, the court disregarded certain issues and findings and entered judgment that Inland West Corporation shall recover from E.E. Paden the sum of $5,465,043.59; that Levingston Shipbuilding recover nothing in its claim against Inland West; and Inland West and Inland Shipyard shall recover nothing against Levingston Shipbuilding and Levingston Industries.

It is from this judgment that all parties have perfected appeal to this Court. In this opinion the parties will be referred to as they were below or by name.

Paden's first eight points of error are grouped in his brief. The first is the real crux of this appeal: "The trial court erred in rendering judgment against Ed Paden because statements made in a petition are privileged and cannot constitute libel."

In *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982), the Court wrote:

"Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *Reagan v. Guardian Life Insurance Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942)...."

In *Reagan, supra,* a statement which a jury found to be a forgery was filed with the Board of Insurance Commissioners. The Court held that it was privileged the same as if uttered or published in the course of a judicial proceeding, in that the privilege applies to proceedings before commissions which exercise quasi-judicial powers. The Court made this observation at page 913: *"It is the occasion, not the communication, which creates or furnishes the privilege."* (emphasis supplied)

Appellant cites us *Wyatt v. Kaplan,* 686 F.2d 276 (5th Cir.1982). There, defendant gave a statement to a newspaper apparently quoting or discussing the allegations of a lawsuit he had filed. At page 282 the Court wrote:

"We thus intimate no view whether Wyatt would have a cause of action if he could show that Kaplan, in his interview with Mufson, accused him of 'skimming off substantial amounts of profits'. We hold only that for purposes of establishing publication in Texas, it is not enough to show that similar, or even identical, allegations from a privileged source were published there. [footnote omitted]"

And, in note 7, the Court wrote the following:

"We intimate no view whether any statements Kaplan may have made to Mufson would have been privileged under the law of either Texas or New York."

In *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the identity of a 17-year-old deceased rape victim was obtained by a television newsman from official court records open to the public. Thereafter, the father of the victim sued for invasion of privacy. The Court held that the protection of freedom of the press barred the state from making defendants' television broadcasts the basis of civil liability when there was no contention that the rape victim's name had been obtained in an improper fashion or that it was not an official court document open to public inspection.

In *Brown v. Wilson,* 554 S.W.2d 817 (Tex.Civ.App.—Tyler 1977, no writ), an attorney published an advertisement which reprinted portions of an opinion by the Texas Supreme Court which indicated that a former judge had been censured by that Court. The Court upheld a summary judgment for the plaintiff below on the grounds the advertisement was true and privileged. *See Walker v. Globe-News Publishing Company,* 395 S.W.2d 686 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.). So, without doubt, Levingston's petition filed in the District Court of Orange County was privi-leged when filed, and the privilege extended to the press if they obtained it from the records. TEX.REV.CIV.STAT.ANN. art. 5432, sec. 1 (Vernon 1958). However, the question remains: How far does the privilege go?

■ Inland West, an engineering firm which had done work for Levingston, determined to start up another shipyard in Orange which would be in competition with ·Levingston. Inland had secured the approval from the Orange County Commissioners' Court of a $10,000,000 bond issue which was never finalized after Paden filed his lawsuit. There is probative evidence from which the jury could believe that Paden was not at all happy about these developments and filed the Levingston suit grossly in excess of any damages that could be proved (even if the allegations were true, which the jury found they were not). Immediately after the lawsuit was filed, Paden instructed a long-time employee and one of his attorneys to give it to the news media, which they did, resulting in extensive publication and harm to Inland's reputation for confidentiality of its work.

In *De Mankowski v. Ship Channel Development Co.,* 300 S.W. 118, 122 (Tex.Civ.App.—Galveston 1927, no writ), we find:

"The privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings."

*See also Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 479 (1969). The jury in the case at bar believed from the evidence (as reflected in their findings to the special issues) that Paden, using the method of filing the lawsuit, intended to eliminate any competition from Inland, and that, in doing so, he accomplished his purpose. We hold that by Paden's actions he stepped

out of the umbrella of privilege and, thus, overrule this point of error.

■ Appellant's points two, three, four, five, and six urge there was no or factually insufficient evidence to support the jury's answer to Special Issues Nos. 6, 7, 12, 13, and 14. These points are neither discussed nor briefed and, therefore, need not be addressed. *Bottinelli v. Robinson*, 594 S.W.2d 112, 119 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). At any rate, we have examined the evidence and find that the answers to such issues are supported by probative evidence.

■ Appellant's seventh point of error complains of the testimony of Gerald A. Greenberg. Greenberg is the editor of a trade publication, the *Ocean Construction Report,* who testified concerning a publication in his paper. Appellant cites no authority under this point of error and we find no reversible error. TEX.R.CIV.P. 434.

We find no merit in appellant's eighth point of error, and it is overruled.

■ Appellant's points of error nine and ten complain of the trial court's failure to grant a severance and try separately Levingston's lawsuit from Inland's counterclaim.

In matters of severance, a trial court has broad discretion. We find no abuse. *Kramek v. Stewart*, 648 S.W.2d 399 (Tex.App.—San Antonio 1983, no writ); *Lubbock Mfg. Co. v. Perez*, 591 S.W.2d 907 (Tex.Civ. App.—Waco 1979, no writ); and *Pitts v. Ashcraft*, 586 S.W.2d 685 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). These points of error are overruled.

Appellant's point of error number eleven urges: "The trial court erred in overruling Paden's special exception and in admitting evidence concerning the claim under Rule 47." [2]

■ It is true no substantive rights are created by the rules of civil procedure.

TEX.REV.CIV.STAT.ANN. art. 1731a, sec. 2 (Vernon 1962). However, the court entered no judgment for a TEX.R.CIV.P. 47 violation; hence, we find no reversible error. This point of error is overruled.

■ Appellant's points of error twelve through eighteen concern the question of whether the evidence is sufficient to support the damage issues. We find it is and thus overrule these points of error.

■ Point of error number nineteen complains of the testimony of a witness, McAlister, concerning Paden's refusal to continue lending a crane to launch a boat. We think this evidence was invited. At any rate, we find no reversible error. TEX.R. CIV.P. 434.

Paden has fourteen crosspoints which have either been answered in this opinion or which we find without merit, and they are overruled.

Inland West's limited appeal has one point of error which we find to be without merit, and it is overruled.

Levingston has two points of error which have been addressed in this opinion. They are overruled.

The judgment of the trial court is affirmed.

Affirmed.

BURGESS, J., not participating.

---

**2.** TEX.R.CIV.P. 47: "An original pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third party claim, shall contain ... (b) in all claims for unliquidated damages only the statement that the damages sought exceed the minimum jurisdictional limits of the court...."