IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 5, 2007 Session


**SIMPSON STRONG-TIE COMPANY, INC. v. STEWART,
ESTES & DONNELL, A Tennessee Partnership**

**Rule 23 Certified Question of Law**
**United States District Court for the Middle District of Tennessee**
**No. 3:06-0094, Aleta A. Trauger, Judge**

———

**No. M2006-02407-SC-R23-CQ - Filed on August 20, 2007**

———

We accepted a question of law certified by the United States District Court for the Middle District of Tennessee to determine whether the absolute litigation privilege applies to what may be defamatory communications made by an attorney prior to a proposed judicial proceeding when the communications are directed at recipients unconnected with the proposed proceeding. We hold that an attorney is privileged to publish what may be defamatory information prior to a proposed judicial proceeding even when the communication is directed at recipients unconnected with the proposed proceeding. In order for the privilege to apply, (1) the communication must be made by an attorney acting in the capacity of counsel, (2) the communication must be related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published.

**Tenn. Sup. Ct. R. 23 Certified Question of Law**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and GARY R. WADE, JJ., joined.

John J. Heflin, III, and Kenneth P. Jones, Memphis, Tennessee, and Arthur J. Shartsis and Erick C. Howard, San Francisco, California, for the plaintiff, Simpson Strong-Tie Company, Inc.

Robert J. Walker and Charles I. Malone, Nashville, Tennessee, for the defendant, Stewart, Estes & Donnell.

# OPINION

## Factual and Procedural Background

This case involves the scope of the absolute litigation privilege applicable to attorneys. Specifically, pursuant to Rule 23 of the Tennessee Rules of the Supreme Court, the United States District Court for the Middle District of Tennessee has certified a question of law to this Court concerning the applicability of the absolute litigation privilege to attorney solicitations directed at recipients who are, at the time of the allegedly defamatory communication, unconnected with the attorney's proposed lawsuit. The question has arisen in the context of a defamation action brought by the plaintiff, Simpson Strong-Tie Company, Inc., a manufacturer of building materials, against the defendant, Stewart, Estes & Donnell, a law firm located in Nashville, Tennessee.

The plaintiff, a California corporation with a manufacturing facility in Gallatin, Tennessee, is in the business of designing, manufacturing, and selling metal connectors and other hardware for use in wood-frame construction. The plaintiff also manufactures and sells screw fasteners for use with its connectors, including screws specifically designed for use in outdoor wood deck construction.

In an apparent effort to solicit business, the defendant law firm announced in a newspaper and on an Internet website that it was investigating the screws manufactured by the plaintiff. Specifically, in January 2006, the defendant placed an advertisement in the Tennessean newspaper which stated:

ATTENTION:
WOOD DECK OWNERS

If your deck was built after January 1, 2004 with galvanized screws manufactured by Phillips Fastener Products, Simpson Strong-Tie or Grip-Rite, you may have certain legal rights and be entitled to monetary compensation, and repair or replacement of your deck. Please call if you would like an attorney to investigate whether you have a potential claim.

Joyce Cope
424 Church Street, Suite 1401
Nashville, Tennessee 37219-2392
Phone (615) 244-6538

In addition to the newspaper solicitation, the defendant placed an announcement on the firm's Internet website which stated:

<u>Class Action Investigations</u>

Phillips Screws and Fasteners and/or Simpson's Screws and Fasteners – We are investigating the accelerated corrosion due to defectively manufactured screws and fasteners caused by pressure treated wood.

On February 7, 2006, the plaintiff filed a complaint against Stewart, Estes & Donnell in the United States District Court for the Middle District of Tennessee. The complaint asserted a cause of action for defamation based on the law firm's newspaper advertisement and website announcement which, according to the complaint, falsely communicated that the plaintiff's products were defective. The complaint also alleged that an individual who had a wood deck constructed with screws manufactured by the plaintiff made a telephone call to the defendant in response to the newspaper solicitation. According to the complaint, this individual was told by the defendant that the plaintiff's screws were defective and would "rust and break and that the deck boards would come up." In addition to the cause of action for defamation, the complaint asserted causes of action for trade libel, tortious interference with business relationships, and violation of the Tennessee Consumer Protection Act.

The defendant moved for a judgment on the pleadings, contending that even if its communications concerning the plaintiff's products were defamatory, it was protected from liability by the absolute litigation privilege.[1] Relying upon Section 586 of the <u>Restatement (Second) of Torts</u>, the defendant asserted in the federal court that an attorney's defamatory communications made preliminary to a proposed judicial proceeding are privileged even when the communications are not targeted at individuals related to the proposed case. In response, the plaintiff argued that the litigation privilege does not extend to defamatory communications where the attorney is merely "trolling for business" and has not yet secured a client on whose behalf the attorney plans to bring suit.

On November 13, 2006, an order was filed by the United States District Court for the Middle District of Tennessee certifying to this Court the following question: "Does the absolute litigation privilege apply to communications made preliminary to a proposed judicial proceeding, where such communications are directed at recipients unconnected with the proceeding in hopes of soliciting them to become parties to it?" The federal court's order observes that Tennessee law is unclear as to whether the litigation privilege encompasses communications made to a "wide world of recipients," such as readers of a newspaper or viewers of a website unconnected with the proposed lawsuit, but who are being solicited to join it as parties. On February 26, 2007, we entered an order accepting certification of the question posed.

---

[1]The defendant denies that its newspaper advertisement or website announcement contains defamatory language concerning the plaintiff's products. The federal court has yet to rule on this issue and we express no opinion on the question as it goes beyond the scope of the question certified to us.

**Analysis**

I. Development of the Litigation Privilege

There are two types of privileges that can be raised as a defense in a defamation case, absolute and qualified. See Jones v. Trice, 360 S.W.2d 48, 51 (Tenn. 1962). A privilege is described as absolute when it is not defeated by the defendant's malice, ill-will, or improper purpose in publishing the defamatory communication.[2] See Dan B. Dobbs, The Law of Torts 1153 (2000). Thus, an absolute privilege is, in effect, a complete immunity. Id. See also Restatement (Second) of Torts 243 (1977) ("the privilege, or immunity, is absolute and the protection that it affords is complete").

By contrast, a qualified or conditional privilege is one that may be defeated if the defamatory publication was made with malice, ill-will, or for an improper purpose. See Pate v. Serv. Merch. Co., 959 S.W.2d 569, 576-77 (Tenn. Ct. App. 1996); Dobbs, supra, at 1158. A qualified privilege is based upon public policy that recognizes information should be given freely when necessary to protect the actor's own interests, the interests of another, or the interests of the public. See Restatement (Second) of Torts at 243.

The present case involves the absolute litigation privilege. This privilege is a common law creation with a 400-year history. In 1591, in one of the earliest English cases to apply the privilege, a plaintiff brought a defamation action after the defendant accused the plaintiff in a document filed with a court of being "a maintainer of pirates and murderers." Buckley v. Wood, (1591) 76 Eng. Rep. 888 (K.B.). The English court found for the defendant, holding that "for any matter contained in the bill that was examinable in the said Court, no action lies, although the matter is merely false, because it [the defamatory publication] was in [the] course of justice." Id. at 889. By 1818, legal commentators had observed that the privilege protected defamatory communications "necessary to the course of legal proceedings, and relevant to a matter before a court." See Paul T. Hayden, Reconsidering the Litigator's Absolute Privilege to Defame, 54 Ohio St. L.J. 985, 1010 (1993).

Following centuries of English application, the litigation privilege gained widespread acceptance in U.S. courts, eventually finding its way to Tennessee. In the first case to apply the privilege in this jurisdiction, Lea v. White, 36 Tenn. (4 Sneed) 111 (1856), this Court observed that defamatory publications made in "the course of a judicial proceeding" are "absolutely privileged, and depend in no respect for their protection upon their *bona fides*." Id. at 113 (internal quotation marks omitted). According to the Lea Court, the privilege applied if "the matter complained of was pertinent to the occasion" because "proceedings connected with the judicature of the country are so important to the public good." Id. at 114 (internal quotation marks omitted). Similarly, another early case, Shadden v. McElwee, 5 S.W. 602, 603 (Tenn. 1887), observed that the privilege applied if the

---

[2]"Publication" is a term of art meaning that the defamatory material was communicated to someone other than the plaintiff who understood it in its defamatory sense. See Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999); Dan B. Dobbs, The Law of Torts 1121-22 (2000).

-4-

defamatory communication was "pertinent . . . or, as it is expressed in some of the cases, the relevancy of the words complained of to the matter at issue, is the test of the privilege." The Court in Shadden recognized the "importance, to a due administration of justice, of upholding the privilege accorded parties to write and speak freely in judicial proceedings." Id. at 605.

In more recent cases, this Court has found that defamatory statements by a judge, witness, counsel, or party "made in the course of a judicial proceeding, if pertinent or relevant, are absolutely privileged, and this is true regardless of whether they are malicious, false, known to be false, or against a stranger to the proceeding." Jones, 360 S.W.2d at 54. Like the early cases, the more recent decisions have embraced the privilege because "access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount." Id. at 51. See also Lambdin Funeral Serv. Inc. v. Griffith, 559 S.W.2d 791, 792 (Tenn. 1978) ("It is generally recognized that statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged . . . even in those situations where the statements are made maliciously.").

Thus, this Court has long accepted the litigation privilege as an important tool in the pursuit of justice. The privilege has also been adopted by most other jurisdictions. See, e.g., Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc., 774 A.2d 332, 338 (D.C. Ct. App. 2001) (noting that the vast majority of jurisdictions have recognized the privilege). In recent times, courts have focused less on whether to adopt the privilege and more on defining its contours. Such is our task here.

## II. Solicitous Communications Made Prior to Litigation

Mindful of the public policy underlying the litigation privilege, we turn to the question certified to us in this case: does the privilege "apply to communications made preliminary to a proposed judicial proceeding, where such communications are directed at recipients unconnected with the proceeding in hopes of soliciting them to become parties to it?" The question posed asks us to consider the narrow issue of whether the privilege encompasses an attorney's solicitous statements made prior to the filing of a lawsuit. In this case, the defendant made the allegedly defamatory publication in a newspaper and on an Internet website before the filing of a complaint.

The defendant argues that the litigation privilege should immunize attorneys from defamation claims for statements made preliminary to a proposed judicial proceeding, including attorney solicitations to individuals with whom there is no existing attorney-client relationship. In the defendant's view, the absence of an attorney-client relationship should have no bearing on the privilege's application because the policies underlying the privilege are equally compelling in the context of attorney solicitations as they are in the context of communications with existing clients. As a result, the defendant contends, the fact that a communication may be characterized as a solicitation, made prior to the filing of a lawsuit, should not automatically defeat the privilege.

The plaintiff responds that the litigation privilege should not apply absent a pending lawsuit in which the attorney is representing the interests of a client or at least has an identifiable prospective client at the time the defamatory communication is published. The plaintiff asserts that to adopt a contrary rule would give attorneys "unfettered license . . . to troll for clients via widespread and indiscriminate advertising portraying possible defendants in any defamatory light advantageous to securing new" business for the attorney.

We are persuaded that the litigation privilege applies to attorney solicitations published prior to the start of litigation. Specifically, the communication at issue is protected by the privilege if (1) the communication was made by an attorney acting in the capacity of counsel, (2) the communication was related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published. The privilege will not apply unless each of these elements is satisfied. The privilege as we have adopted it is consistent with the Restatement view that

> [a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977). The comments to Section 586 indicate that the privilege is based upon "a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." Id. at cmt. a. Clearly, the privilege exists to protect zealous advocacy.

In addition, the comments to Section 586 provide that the privilege applies only when "made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation." Id. at cmt. c. Thus, the privilege applies only when there is a reasonable nexus between the publication in question and the litigation under consideration. Further, the comments provide that "[a]s to communications preliminary to a proposed judicial proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration." Id. at cmt. e. Accordingly, the "bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." Id. These requirements accurately reflect the parameters of the privilege as we have adopted it.

The rule we have adopted today is also consistent with our prior cases that have embraced the privilege on the basis that "access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount." Jones, 360 S.W.2d at 51. In our view, the rationale underlying the privilege–to encourage attorneys to speak freely and

candidly, undeterred by the fear of an action for defamation–is just as compelling when the attorney is advising a prospective client of opportunities to pursue legal redress as it is when the attorney is conferring with an existing client. That the attorney is consulting with a prospective client prior to the filing of a case should not, by itself, defeat the privilege.

The rule we have adopted also finds support in cases from other jurisdictions. For example, in Finkelstein, Thompson & Loughran, 774 A.2d at 337, a lawyer sent an unsolicited e-mail to a shareholder of the plaintiff corporation informing the shareholder that the lawyer's firm handled class action lawsuits and that his firm was "investigating [the plaintiff] at this time." The shareholder contacted the lawyer in response to the solicitation, at which point the lawyer allegedly made false statements about the plaintiff. The plaintiff sued the lawyer and his law firm for defamation. As in the present case, the defendants maintained that the allegedly defamatory communications were privileged as statements made preliminary to a proposed judicial proceeding. The plaintiff responded that the litigation privilege did not apply to an attorney who is merely soliciting a prospective client for a potential lawsuit. The plaintiff argued, as the plaintiff argues here, that if the rule were otherwise, a law firm "'trolling for clients' and motivated . . . by self-interest will have *'carte blanche* authority to lie about any potential target regardless of whether it had actual or proposed clients who were even pondering, much less seriously considering litigation.'" Id. at 345. The court in Finkelstein rejected these arguments and held that communications made during preliminary consultations with prospective clients, including contacts that may be characterized as solicitations, fall within the scope of the privilege. Id. The court reasoned that the rationale underlying the privilege is just as compelling when an attorney is advising a prospective client as it is when the attorney is consulting with an existing client. Id. at 344.

Courts elsewhere have likewise held that the privilege is applicable to defamatory communications made in client solicitations. See e.g., Rubin v. Green, 847 P.2d 1044 (Cal. 1993) (soliciting clients in anticipation of litigation is privileged); Popp v. O'Neil, 730 N.E.2d 506 (Ill. App. Ct. 2000) (defamatory letter to a prospective client was privileged because of the need for open communication); Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling, 535 N.W.2d 653 (Minn. Ct. App. 1995) (law firm could not be liable for defamatory statements made in a solicitation letter to potential plaintiffs); Samson Inv. Co. v. Chevaillier, 988 P.2d 327 (Okla. 1999) (draft complaint sent to a prospective client was protected by the litigation privilege where the document was meant to solicit clients). Although the plaintiff cites several cases in which the privilege was found to be inapplicable, such as Williams v. Kenney, 877 A.2d 277 (N.J. Super. Ct. App. Div. 2005), Chafoulias v. Peterson, No. C2-01-1617, 2003 WL 23025097 (Minn. Ct. App. Dec. 30, 2003), and Kurczaba v. Pollock, 742 N.E.2d 425 (Ill. App. Ct. 2000), each of these cases involved communications made during ongoing litigation, not communications made to solicit clients preliminary to litigation.

III. Scope of the Communication

Having decided that the litigation privilege applies to attorney solicitations published prior to the filing of a lawsuit, we turn to whether the privilege applies if the defamatory communication

is not targeted at specific individuals having an interest in the proposed litigation. The plaintiff argues that the privilege should not apply to circumstances such as those presented here because rather than limiting the defamatory communications to persons having a potential claim against the plaintiff, the defendant "indiscriminately circulated them to the entire world." According to the plaintiff, the defendant had not consulted with a client or potential client about any claim against the plaintiff but broadly scattered its defamatory statements to everyone with access to the Tennessean newspaper and the Internet.[3] Relying upon cases finding that a defamatory communication is protected only if it is published to persons with an interest in the proposed litigation, see, e.g., Andrews v. Elliot, 426 S.E.2d 430, 433 (N.C. Ct. App. 1993), the plaintiff maintains that untargeted communications by an attorney should fall outside the permissible scope of the privilege to safeguard against abuse.

The defendant responds that communications to individuals unconnected with the proposed litigation are an unavoidable byproduct when the attorney has no feasible means of limiting the communication to those who may be interested in the litigation. According to the defendant, it lacked the ability to identify a particular group of persons having an interest in the potential litigation and, therefore, the breadth of the communication was unavoidably great. The defendant also argues that defeating the privilege by virtue of the communication being "untargeted" would chill beneficial communications related to proposed litigation and allow entities like the plaintiff to thwart meritorious lawsuits by bringing defamation suits against opposing attorneys.[4]

While we are not unsympathetic with the plaintiff's position, limiting the privilege in the manner suggested by the plaintiff could, in our view, inhibit potential parties or witnesses from coming forward and impede the investigatory ability of litigants or potential litigants, thereby undermining the reasons for the privilege. In some situations, attorneys may have no practical means of discerning in advance whether the recipients of the communication have an interest in the proposed proceeding. In that event, the attorney can only communicate with those having the ability and desire to join the proposed litigation by publishing the statement to a wider audience, which may include unconnected individuals. When the prerequisites of the privilege are satisfied, the privilege

---

[3]Whether the defendant law firm in fact had a client or identifiable potential client, and whether the communications in question were defamatory, are factual questions for the federal court to determine.

[4]The defendant urges us to adopt Section 604 of the Restatement, which states that

[o]ne who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter . . . knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating the defamatory matter.

We note, however, that, under its own terms, Section 604 applies to situations giving rise to a conditional privilege, not an absolute privilege. Moreover, Section 604 is not part of the Restatement's discussion of the absolute litigation privilege. Regardless, adoption of Section 604 is unnecessary in light of the limitations we have imposed on the privilege itself.

should not be lost based on this fact alone. We note, however, that unnecessary defamatory publications to recipients unconnected with the proposed proceeding would not be privileged. See Sullivan v. Birmingham, 416 N.E.2d 528, 530 (Mass. App. Ct. 1981) ("the privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged."). For example, if the attorney has a feasible way of discerning which recipients have an interest in the case, but nevertheless publishes the defamatory communication to those having no interest in the case, the privilege would not apply.

Moreover, mindful of the need for caution in according an absolute privilege for what may be defamatory publications made preliminary to litigation, we emphasize that attorneys do not have an unfettered license to defame their adversaries. As this Court stated 120 years ago,

> [w]e recognize fully the importance, to a due administration of justice, of upholding the privilege accorded parties to write and speak freely in judicial proceedings; but in so doing, we must not lose sight of the fact that it concerns the peace of society; that the good name and repute of the citizen shall not be exposed to the malice of individuals, who, under the supposed protection of an absolute privilege . . . volunteer defamatory matter in utterances not pertinent. To hold such persons responsible in damages cannot fairly be said to hamper the administration of justice. The privilege . . . is great, and will be protected in all proper cases, but it must not be mistaken for unbridled license.

Shadden, 5 S.W. at 605. The same observation holds true today, for the intent of the privilege is not to encourage lawyers to defame. Rather, its intent "is to free honorable lawyers to render candid and zealous advice and representation to their clients without fear of retaliatory harassment from their adversaries." Finkelstein, 774 A.2d at 338.

We also observe that, even if the requirements of the privilege are satisfied, an attorney who exceeds the bounds of permissible conduct may face collateral consequences. For example, an attorney who makes false and defamatory statements which result in a baseless lawsuit may face a malpractice action by the client or a malicious prosecution action by the party defamed, or both. Finkelstein, 774 A.2d at 346. An attorney who institutes meritless litigation or files suit for an improper purpose may also face sanctions imposed by the courts under Rule 11 of the Tennessee Rules of Civil Procedure. In addition, an attorney may be disciplined by the Board of Professional Responsibility for violating ethical requirements which prohibit the filing of frivolous claims or soliciting employment by means of fraud or false or misleading statements. See Tenn. Sup. Ct. R. 8, RPC 3.1, 7.1, 7.3. These alternative remedies for attorney misconduct present "the risk of punishment for the errant lawyer . . . real enough to require that lawyer to beware." Finkelstein, 774 A.2d at 346. In light of these alternative remedies, coupled with the limitations we have placed on the privilege itself, we are satisfied that the privilege cannot be exploited as an opportunity to defame with impunity.

## Conclusion

For the foregoing reasons, we hold that an attorney is privileged to publish what may be defamatory information prior to a proposed judicial proceeding, even though the communication may be received by individuals who are unconnected with the proposed proceeding. In order for the privilege to apply, (1) the communication must be made by an attorney acting in the capacity of counsel, (2) the communication must be related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published. The costs in this Court are taxed one-half to each party and their sureties, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE