Certiorari Granted, June 8, 2011, No. 32,985
Certiorari Granted, June 8, 2011, No. 32,987

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-060

Filing Date:  March 30, 2011

Docket No. 29,567

HELENA CHEMICAL COMPANY,

      Plaintiff-Appellant,

v.

PAMELA URIBE, LINDA THOMAS,
individually and as representative of
THOMAS & WAN, L.L.P., and
THOMAS & WAN, L.L.P.,

      Defendants-Appellees,

and

ARTURO URIBE,

      Defendant.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Jerald A. Valentine, District Judge

Jackson Walker L.L.P.
Robert L. Soza, Jr.
Elena P. Villaseñor
San Antonio, TX

Simons Firm, LLP
Frank M. Bond
Faith Kalman Reyes
Santa Fe, NM

for Appellant

1

Juarez Law Office
Luis B. Juarez
Las Vegas, NM

Freedman, Boyd, Hollander, Goldberg,
Ives & Duncan, P.A.
Sara Berger
Albuquerque, NM

for Appellee Pamela Uribe

Law Office of Jack Brant, P.C.
Jack Brant
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles K. Purcell
Albuquerque, NM

for Appellees Linda Thomas and Thomas & Wan, L.L.P.

**OPINION**

**SUTIN, Judge.**

{1}     This appeal tests the defense of absolute immunity against liability for alleged defamatory statements made to news reporters. The immunity asserted is based on absolute privilege. Throughout this opinion, we refer to the immunity and the privilege as "absolute privilege." Before and after attorney Linda Thomas filed a toxic tort action in Santa Fe County against Helena Chemical Company (Helena) on behalf of Arturo and Pamela Uribe and other plaintiffs, Ms. Thomas and Mrs. Uribe made statements to news reporters that Helena claims, in this separate action, were defamatory. The district court granted summary judgment in favor of Ms. Thomas and Mrs. Uribe holding that they were immune from liability based on their defense of absolute privilege. The issues on appeal center on whether the court erred in granting that immunity as to (1) statements made at a community meeting attended by a news reporter ten months before a judicial proceeding was initiated, and (2) statements made the day after the proceeding was initiated to news reporters who were invited to hear the statements. We hold that the absolute privilege is unavailable under the circumstances in this case where the alleged defamatory statements were made to news reporters who had no relationship or interest in the judicial proceeding contemplated and filed.

**BACKGROUND**

2

**{2}** Helena is a crop protection company that started business in Mesquite, New Mexico in 1989. In October 2008, the Uribes, among other residents of Mesquite, filed an action against Helena (the October 2008 tort action) alleging personal injury and property damage from "exposure to hazardous dusts, fumes, and contaminants emanating from [Helena]." They averred, among other facts to support their claims, that the New Mexico Environment Department (NMED) had accused Helena of violating New Mexico environmental standards, had issued notices to Helena regarding violations of Helena's air quality permit, had assessed a penalty against Helena, had confirmed contamination by Helena of underground water, and had fined Helena regarding an unreported spill.

**{3}** Before their October 2008 tort action, in December 2007, Mr. Uribe hosted a meeting to which the public at large was invited through public advertisements. Mr. Uribe also invited Heath Haussamen, a political news reporter, writer, editor, and publisher of a website blog called "Heath Haussamen on New Mexico Politics." Mr. Haussamen attended the meeting solely in his "capacity as a news reporter/writer who covers New Mexico."

**{4}** In addition, Mr. Uribe and Mesquite residents invited Ms. Thomas and Michelle Wan, Texas licensed attorneys, to attend the December 2007 meeting to discuss matters relating to and possible litigation against Helena, and Ms. Thomas spoke at the meeting. Residents were contemplating a lawsuit against Helena and were interested in hiring Ms. Thomas and Ms. Wan to represent them. Mr. Uribe and other residents were aware that Ms. Thomas and Ms. Wan had sued Helena in Texas. Mr. Uribe, who was president of the Mesquite Community Action Committee, and who had been involved for several years with the Helena air quality and contamination issues, opened the meeting and invited those in attendance to talk to the attorneys about how they felt as to their health and future in Mesquite. Ms. Thomas and Ms. Wan were later hired to represent the Uribes and other residents in the October 2008 tort action against Helena. On October 9, 2008, the day after that action was filed, a press conference was held by the attorneys outside of Helena's facility to announce the filing of the action (the press conference).

**{5}** Helena filed the present defamation action on December 8, 2008, alleging that statements made by Ms. Thomas at the December 2007 meeting and statements made by Ms. Thomas and Mrs. Uribe at the press conference were defamatory. Helena alleged that the following statement made by Ms. Thomas at the December 2007 meeting was defamatory: "[C]hildren are out here and they're playing in the yard, they're putting their hands in their mouth, so they're really getting a dose that way. Kids are at a much greater risk." Helena further alleged that Ms. Thomas defamed it when she reportedly said that Helena's actions in Mesquite appeared to be "pretty egregious." In addition, Helena claimed that at the press conference Ms. Thomas defamed Helena by stating that "[t]he underground water has been contaminated" and that Mrs. Uribe defamed Helena by stating that Helena caused "[u]pper respiratory problems, pneumonia and bad allergies, bloody noses[.]"

3

**{6}** In a summary judgment proceeding filed by Ms. Thomas and Mrs. Uribe to establish their defense of absolute privilege as to Helena's defamation claims, Ms. Thomas and Mrs. Uribe necessarily assumed for the purposes of the motion for summary judgment that their statements were defamatory. The absolute privilege defense can be asserted only against statements admittedly defamatory. We emphasize that, on appeal, the same assumption holds for the purposes of our analyses and determinations. We reverse.

## DISCUSSION

### Standard of Review

**{7}** "An absolute or unqualified privilege means absolute immunity from liability for defamation." *Neece v. Kantu*, 84 N.M. 700, 705, 507 P.2d 447, 452 (Ct. App. 1973). "The question of the relationship between the alleged defamatory matter and the proposed or existing judicial proceeding is a question of law to be determined by the court." *Penny v. Sherman*, 101 N.M. 517, 520, 684 P.2d 1182, 1185 (Ct. App. 1984). We review the absolute-privilege-entitlement issue de novo. *See Gregory Rockhouse Ranch, L.L.C. v. Glenn's Water Well Serv., Inc.*, 2008-NMCA-101, ¶¶ 16-19, 144 N.M. 690, 191 P.3d 548.

### The Issues at Hand

**{8}** Helena's appellate points are that the defense of absolute privilege does not apply to the alleged defamatory statements because (1) Ms. Thomas's December 2007 statements were made ten months before the October 2008 tort action was filed, a period "too far in advance of litigation, and/or . . . at a time when she did not have any clients, and thus could not seriously have considered any claims"; and (2) the December 2007 meeting and the press conference statements made by Ms. Thomas and Mrs. Uribe were communicated to and received by news reporters who were wholly uninterested in and unrelated to the judicial proceeding.

**{9}** Helena emphasizes that whether absolute privilege can be applied in this case is an important matter of public policy. On the issue of public policy, Helena asks:

Does the State of New Mexico want to encourage[:]

1.    trials by press?

2.    attorneys defaming third parties to the general public as a means of attracting potential clients?

3.    defamation so remote in time from the filing of a lawsuit or at a time when litigation is only a bare possibility?

4

**The Law of Absolute Privilege in New Mexico**

{10}     This Court recognized early on that the standard for ascertaining the extent of the absolute privilege is whether the alleged defamatory matter is reasonably related to the subject of inquiry.  *Stryker v. Barbers Super Mkts., Inc.*, 81 N.M. 44, 45-46, 462 P.2d 629, 630-31 (Ct. App. 1969).  *Stryker* described the public-policy reason for absolute privilege as follows:

> The absolute immunity of parties litigant rests upon the public policy which deems it desirable that all suitors, whether malicious and bold, or conscientious and timid, should have free access to the conscience of the State with whatever complaint they choose to make. This is necessary to a thorough and searching investigation of the truth. . . . Perfect freedom to say in their pleadings whatever the parties choose to bring to the consideration of the court or jury tends obviously to promote the intelligent administration of justice.

*Id.* at 45, 462 P.2d at 630 (internal quotation marks and citation omitted).

{11}     Also early on, this Court adopted the *Restatement of Torts* § 586 (1938), relating to absolute privilege which stated:

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, . . . or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto.

*Romero v. Prince*, 85 N.M. 474, 476, 513 P.2d 717, 719 (Ct. App. 1973) (internal quotation marks and citation omitted).  *Romero* clarified that "[i]f the alleged defamatory statement is made to achieve the objects of the litigation, the absolute privilege applies even though the statement is made outside the courtroom and no function of the court or its officers is invoked." *Id.* at 477, 513 P.2d at 720.  And *Romero* articulated the standard that defamatory statements made during the course of, as a part of, and reasonably related to a judicial proceeding were absolutely privileged.  *Id.*

{12}     Section 586 was continued in the *Restatement (Second) of Torts* § 586 (1977), essentially unchanged from the 1938 version on which the *Romero* Court relied. *Penny*, 101 N.M. at 519-20, 684 P.2d at 1184-85.  Citing to comment (a) in the later Restatement, we stated in *Penny* that "[t]he absolute privilege is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Id.* at 520, 684 P.2d at 1185.  In addition, this Court stated that "[a]ll doubt should be resolved in favor of recognizing the privilege." *Id.*

**{13}** The issue in *Penny* was whether the district court erroneously failed to recognize what one party interpreted *Romero* to require, namely, that publication to a person with a direct interest in the judicial proceeding was an essential element of the absolute-privilege defense. *Penny*, 101 N.M. at 520, 684 P.2d at 1185. *Penny* explained that publication to a person with a direct interest was not an independent element of the defense but, instead, was "one factor in the analysis of whether a publication ha[d the required] relation to a judicial proceeding" to permit the defense. *Id.*

**{14}** The Court in *Penny* offered a canvass of other cases, stating that "[s]everal courts have recognized absolute immunity for publication to an individual or organization without a direct interest in the relevant proceeding where the recipient nonetheless had some interest in the proceeding." *Id.* Yet, citing cases involving communications with a newspaper and with a company's customers, this Court also "recognize[d] that courts have refused to apply the absolute privilege to communications made to recipients wholly unrelated to the proceeding." *Id.* at 521, 684 P.2d at 1186.

**{15}** This Court's latest absolute-privilege case is *Gregory Rockhouse Ranch* in which the defendant counterclaimed alleging slander of title. 2008-NMCA-101, ¶ 17. The primary issue relating to absolute privilege was the temporal proximity of the alleged defamation to the initiation of judicial proceedings. *Id.* ¶ 19. The slander claim was predicated on letters dated between September 1999 and June 2000 sent by the plaintiff to governmental entities several months before the initiation of judicial proceedings in December 2000. *Id.* As to the timing of the letters in relation to initiation of judicial proceedings, the Court stated:

> [W]e find no authority to support extension of this privilege to communications made so far in advance of litigation. Nor do we find any indication that litigation was seriously contemplated at the time that the communications were made. We regard this as fatal to [the] claim of absolute privilege.

*Id.* In support of this ruling, the Court noted *Restatement (Second) of Torts* § 587 cmt. e (1977) as "observing that, with respect to communications which are preliminary to a judicial proceeding, the absolute privilege applies only if a proceeding is contemplated in good faith and under serious consideration at the time the communication is made." *Gregory Rockhouse Ranch*, 2008-NMCA-101, ¶ 19 (internal quotation marks omitted). The *Restatement (Second) of Torts* § 587 reads in full:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

6

**{16}** To summarize New Mexico defamation case law, the absolute-privilege defense is available when an alleged defamatory statement is made to achieve the objects of the litigation and is reasonably related to the subject matter of the judicial proceeding. As part of the absolute-privilege analysis, we consider the extent to which the recipient of the statement had an interest in the judicial proceeding. When the statement precedes initiation of the judicial proceeding, the privilege is available only if the proceeding in question is contemplated in good faith and under serious consideration at the time the statement is made. We add that cases such as this must be decided on a case-by-case basis with the outcome depending on the particular facts of the case. *See Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979) ("A case-by-case evaluation must be made to determine whether the publication fits within the . . . privilege.").

**The Pre-Action Statements in Relation to a Contemplated Proceeding**

**{17}** Ms. Thomas's pre-action statements at the December 2007 meeting raise the question, under the test in *Gregory Rockhouse Ranch*, whether such statements are protected by absolute privilege. This depends on whether the proceeding is contemplated in good faith and is under serious consideration. The facts show that, in this regard, the statements fit within the privilege.

**{18}** Residents of the Mesquite community were concerned with what they believed to be a historical, existing, and continuing environmental hazard to their community caused by Helena, and they sought out Ms. Thomas. She was an attorney who was knowledgeable on the environmental issues and who had engaged Helena and others in environmental litigation in Texas. Residents invited Ms. Thomas to attend the December 2007 meeting to discuss the environmental issues and the possibility of filing a judicial proceeding against Helena. Residents and Ms. Thomas were aware of the history of NMED actions against Helena. The facts support the conclusion that, at the time of the December 2007 meeting, the residents responsible for holding the meeting and Ms. Thomas in good faith contemplated and gave serious consideration to initiating a judicial proceeding, thereby falling within the test in *Gregory Rockhouse Ranch*. *See* 2008-NMCA-101, ¶ 19.

**{19}** Furthermore, we see no facts indicating that the intervening time between the December 2007 meeting and the October 2008 initiation of the judicial proceeding diminished the residents' contemplation and consideration of filing a judicial proceeding. Following the meeting, Ms. Thomas was retained and a complaint was ultimately filed. That months passed during the processes of retaining Ms. Thomas followed by her preparation and filing of the judicial proceeding was not, in this case, a basis on which to deny the absolute-privilege defense. Good faith contemplation and serious consideration reasonably ripened into further activity toward a judicial proceeding.

**Statements Made to Invited News Reporters**

7

{20}     Statements were made to news reporters both before and after the filing of the October 2008 tort action.  It seems to be understood that the invitations to news reporters to attend the December 2007 meeting and the press conference were extended with the desire to inform the public through the news media about the residents' environmental and health concerns and activities related to Helena, if not also to inform the public that a judicial proceeding was contemplated or initiated.  It appears to be undisputed that the news reporters attended solely in their capacities as news reporters.  The statements about which Helena complains were reported in the news media.  We see no evidence in the record, and Ms. Thomas and Mrs. Uribe point to none, showing that the news persons involved were otherwise in any way related to or in any way held an interest in the judicial proceeding.

**The Law Relating to Statements to the Press**

{21}     A considerable number of cases consider as an element in an absolute-privilege analysis whether the recipient is in any way related to or has an interest in the proceeding.  Although sometimes expressed in different ways, the rule in these cases is that statements communicated to news media recipients who are wholly unrelated to and have no interest in the judicial proceeding are not protected by absolute privilege.

{22}     We start with the mainstay case of *Kennedy v. Cannon*, 182 A.2d 54 (Md. 1962), which is referred to in *Penny*, and the mainstay cases of *Asay*, 594 F.2d 692, and *Green Acres Trust v. London*, 688 P.2d 617 (Ariz. 1984) (en banc).  In *Kennedy*, a communication to a newspaper editor by an attorney who had interviewed a defendant charged with rape gave rise to the alleged defamation and a suit for defamation by the victim of the rape.  182 A.2d at 55-56.  The victim's suit was based on an allegation that the attorney's words charged her with the crime of adultery. *Id.*  Following the *Restatement of Torts* § 586 and various cases, the court in *Kennedy* held that the absolute privilege would not be extended to statements outside the purview of the judicial proceeding and "spoken before persons in no way connected with the proceeding."  182 A.2d at 58.  The court held that the statements to the newspaper were not absolutely privileged, stating that all of the cases on which it relied "make it obvious that aside from any question of ethics, an attorney who wishes to litigate his case in the press will do so at his own risk."  *Id.*

{23}     Following the *Kennedy* guideline, the court in *Asay* stated that "[i]n determining whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the matter is published" and that "[p]ublication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." *Asay*, 594 F.2d at 697; *see Converters Equip. Corp. v. Condes Corp.*, 258 N.W.2d 712, 717 (Wis. 1977) (holding that "for the absolute privilege to attach[,] the statement at issue must have been published on an occasion or in a context [which] is an integral part of the judicial or quasi-judicial proceeding involved").  The court in *Asay* held that Iowa law did "not grant an absolute privilege for the dissemination of a complaint to news services."  594 F.2d at 699.

8

**{24}** Following the *Asay* guideline, in *Green Acres Trust*, the court held that the absolute privilege was unavailable to an attorney where a newspaper reporter at a press conference "had no relation to the proposed class action[,] . . . played no role in the actual litigation[,] . . . [and] lacked a sufficient connection to the proposed proceedings[.]" *Green Acres Trust*, 688 P.2d at 622-23. The court further stated that "[t]he press conference simply did not enhance the judicial function[.]" 688 P.2d at 623. *Green Acres Trust* held that, in analyzing whether an alleged defamatory statement is related to a judicial proceeding, "both content and manner of extra-judicial communications must bear some relation to the proceeding." *Id.* at 622 (internal quotation marks omitted). In reaching this determination, the court agreed with the analysis in *Asay* that "the application of the absolute[-]privilege defense was dependent upon an analysis of the occasion for the communication and the substance of the communication." *Green Acres Trust*, 688 P.2d at 622. The court in *Green Acres Trust* also agreed with the *Asay* court's views "that the recipient of the extra-judicial communication [must] have some relationship to the proposed or pending judicial proceeding for the occasion to be privileged[.]" *Green Acres Trust*, 688 P.2d at 622. A strong majority of cases agree with the *Kennedy*, *Asay*, and *Green Acres Trust* analyses, rules, or results.[1]

---

[1] *See Jones v. Clinton*, 974 F. Supp. 712, 731 (E.D. Ark. 1997); *Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1313-14 (D. Colo. 1998); *Davidson v. Cao*, 211 F. Supp. 2d 264, 275 (D. Mass. 2002); *Webster v. Byrd*, 494 So. 2d 31, 35 (Ala. 1986); *Rothman v. Jackson*, 57 Cal. Rptr. 2d 284, 292, 294 (Ct. App. 1996); *Bradley v. Hartford Accident & Indem. Co.*, 106 Cal. Rptr. 718, 723 (Ct. App. 1973), *overruled on other grounds by Silberg v. Anderson*, 786 P.2d 365 (Cal. 1990) (in bank); *Kennedy v. Zimmermann*, 601 N.W.2d 61, 66 (Iowa 1999); *Williams v. Kenney*, 877 A.2d 277, 290-91 (N.J. Super. Ct. App. Div. 2005); *Cappello v. Scott*, 644 A.2d 102, 102-03 (N.J. Super. Ct. App. Div. 1994); *Andrews v. Elliot*, 426 S.E.2d 430, 432-33 (N.C. Ct. App. 1993); *Brown v. Gatti*, 99 P.3d 299, 305 (Or. Ct. App. 2004), *aff'd in part and rev'd in part on other grounds*, 145 P.3d 130 (Or. 2006); *Bochetto v. Gibson*, 860 A.2d 67, 73 (Pa. 2004); *Barto v. Felix*, 378 A.2d 927, 930 (Pa. Super. Ct. 1977); *Pratt v. Nelson*, 2007 UT 41, ¶¶ 46-48, 164 P.3d 366; *see also Prosser & Keeton on The Law of Torts* § 114, at 820 (5th ed. 1984) (stating that "[i]t is clear . . . that statements given to the newspapers concerning the case are no part of a judicial proceeding, and are not absolutely privileged"); 1 Goeffrey C. Hazard, Jr. & W. William Hodes, *The law of Lawyering* § 4.15, at 4-73 (3d ed. 2001) (citing *Kennedy* and *Seidl* and stating that "[s]tatements made at press conferences . . . are generally not considered sufficiently related to the litigation itself to qualify for the privilege"); Douglas R. Richmond, *The Lawyers' Litigation Privilege*, 31 Am. J. Trial Advoc. 281, 324 (2007) (stating that "the great weight of authority indicates that lawyers' statements to the press are not related to judicial proceedings and therefore are not absolutely privileged"); Grace M. Giesel, *Defamation Liability for Attorney Speech: A Policy-Based and Civility-Oriented Reconsideration of the Absolute Privilege for Attorneys*, 10 Ga. St. U. L. Rev. 431, 469 (1994) (stating that "[f]ortunately, courts and commentators agree that letters and other communications to the media do not benefit from an absolute privilege").

**{25}** In their answer briefs, Ms. Thomas and Mrs. Uribe rely on two Texas Court of Appeals cases to justify the absolute-privilege defense, namely, *Dallas Independent School District v. Finlan*, 27 S.W.3d 220 (Tex. Ct. App. 2000), and *Hill v. Herald-Post Publishing Co.*, 877 S.W.2d 774 (Tex. Ct. App. 1994), *aff'd in part, rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994). *See Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. Ct. App. 2004) (following *Hill* and *Finlan* and stating that "[j]ust as the mere delivery of pleadings in pending litigation to the news media does not amount to publication outside of the judicial proceedings that would result in a waiver of the absolute privilege, a press release advising the media that a lawsuit has been filed, including a basic description of the allegations, does not amount to publication outside of the judicial proceedings resulting in a waiver of the absolute privilege"). These cases, along with a Nebraska decision, represent a minority view on the issue. *See Prokop v. Cannon*, 583 N.W.2d 51, 58-59 (Neb. Ct. App. 1998) (stating that the absolute privilege "is confined to statements made by an attorney while performing his function as such" and that the privilege was "available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it[,]" but nonetheless finding "that the statements made to the news media were well within the privilege" (internal quotation marks and citation omitted)).

**{26}** In *Finlan*, attorneys for the school district issued a written press release announcing that the school district had, that day, filed a suit against certain former district board of trustees members (the members) for fraud, civil conspiracy, and racketeering. 27 S.W.3d at 239. The release stated that the time had come to expose the public to what the members were truly trying to accomplish in suits the members had initiated against the school district. *Id.* The release went on to state that the members were seeking a $1,650,000 settlement from the district and were "only out for their own personal gain seeking to create a financial windfall for themselves by harassing the [school district] with the filing of frivolous lawsuits and seeking the private bank records of the members[.]" *Id.* (internal quotation marks omitted). The members counterclaimed against the school district for defamation, but the trial court granted summary judgment in favor of the school district based on its absolute privilege defense. *Id.* at 237-38. The court of appeals affirmed the trial court's summary judgment, determining that the school district's petition and the press release statements "which relate[d] [to] the allegations in [the] petition [were] absolutely privileged[.]" *Id.* at 239. In addition, the court determined that the statements "relate[d] to pending litigation and settlement efforts." *Id.* Mindful that it "must resolve all doubt in favor of the relevance of the lawyer's statement[,]" the court went on to say "we must extend the privilege to any statement that bears some relation to a judicial proceeding." *Id.* The court in *Finlan* relied substantially on *Hill* and on *Russell v. Clark*, 620 S.W.2d 865 (Tex. Ct. App. 1981). In *Hill* an attorney sued another attorney who made statements to a reporter and who delivered court-filed documents to the reporter. 877 S.W.2d at 777. The court distinguished *Green Acres* by pointing out that *Hill* "involve[d] the mere delivery of documents previously filed in . . . criminal proceedings and available to the public." 877 S.W.2d at 783. The court also held that the attorney's statement to the reporter "in response to an inquiry about [the attorney's] motions . . . bore a substantial relationship to the criminal proceedings and was

10

made in furtherance of his representation[,]" in that the attorney was "merely affirming the allegations in his motion and brief and his belief that he could prove them," and indicating that this response was one that "many if not most attorneys would make if queried by the news media about the allegations in a petition or an indictment." *Id.* at 783-84. *Russell* involved an attorney's letter to the plaintiffs' investors "seeking evidence for use in pending litigation." 620 S.W.2d at 866. The court was convinced that privilege applied because the content of the letter bore a relationship to the judicial proceeding. *Id.* at 870. *Russell* did not involve communications to news reporters.

{27}    The Texas cases do not specifically include as part of their absolute privilege analysis the *Asay* second factor, namely, whether the recipient of the alleged defamatory communication had any interest in or was related in any way to the judicial proceeding. We disagree with Ms. Thomas and Mrs. Uribe to the extent they contend that *Finlan* necessarily stands for the proposition that the occasion of the defamatory communication or the relationship or interest of the recipient to the judicial proceeding is not relevant or part of the absolute-privilege analysis. The extent to which the cases might be interpreted to allow the defense on the sole ground that the content of the statement relates to a judicial proceeding, we reject any such standard as inadequate. Further, *Hill* determined that the response to the reporter was only a reiteration of what was in the court-filed documents. 877 S.W.2d at 783. And *Russell* did not involve news reporters. For these reasons, Ms. Thomas and Mrs. Uribe can find no comfort or support in the Texas cases and minority view.

{28}    In oral argument before this Court, Ms. Thomas placed considerable weight on *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18 (Tenn. 2007), as well as on other cases, that had not until the argument been cited or argued by Ms. Thomas, in arguing that the absolute privilege protects an attorney's pre-proceeding statements even when the targets or recipients are not known to be persons who have some interest in the prospective proceeding. These cases do not help Ms. Thomas. *Simpson Strong-Tie* involved a newspaper advertisement and a website announcement each trolling for unknown persons in "an apparent effort to solicit business." *Id.* at 20-21. The other cases involved targeted solicitations to persons who obviously would have some interest in the contemplated legal proceeding.[2]    Although the court in *Simpson Strong-Tie* held that the attorneys were protected by the absolute privilege, even though they did not target persons they knew in advance had some interest in the contemplated proceeding, the court was "not unsympathetic with the plaintiff's position" that "untargeted communications by an attorney should fall outside the permissible scope of the privilege to safeguard against abuse." *Id.* at 26. The

---

[2] The other cases relied on by Ms. Thomas in oral argument are *Rubin v. Green*, 847 P.2d 1044 (Cal. 1993) (in bank); *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332 (D.C. 2001), *overruled on other grounds by McNair Builders, Inc. v. Taylor*, 3 A.3d 1132 (D.C. 2010); *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling*, 535 N.W.2d 653 (Minn. Ct. App. 1995); *Samson Inv. Co. v. Chevaillier*, 1999 OK 19, 988 P.2d 327.

court went out of its way to indicate there are limitations on the privilege, stating "that unnecessary defamatory publications to recipients unconnected with the proposed proceeding would not be privileged" and that the court was "mindful of the need for caution in according an absolute privilege for what may be defamatory publications made preliminary to litigation, we emphasize that attorneys do not have an unfettered license to defame their adversaries." *Id.* And the court quoted language from its 120-year-old case of *Shodden v. McElwee*, 5 S.W. 602, 605 (Tenn. 1887), which stated in part:

> [W]e must not lose sight of the fact that it concerns the peace of society; that the good name and repute of the citizen shall not be exposed to the malice of individuals, who, under the supposed protection of an absolute privilege, . . . volunteer defamatory matter in utterances not pertinent. To hold such persons responsible in damages cannot fairly be said to hamper the administration of justice.

**{29}** Also in oral argument, Ms. Thomas and Mrs. Uribe asked this Court to decide, as a matter of law based on the record before us, that the statements attributed to them were not defamatory. They asserted that if we were to examine the statements and the surrounding circumstances, under the law of defamation, we would determine that the statements were not defamatory as a matter of law. We refuse this request to address the merits of the defamation claims, and we render no opinion regarding the merits of the defamation claims. As we indicated earlier in this opinion, whether the statements on which Helena's claims were based constituted defamation was not at issue on summary judgment. Ms. Thomas and Mrs. Uribe sought summary judgment under the assumption that their statements were, in fact, defamatory. It may well be that Ms. Thomas and Mrs. Uribe could have fared well in terms of expense and success in the initial stages of the district court proceeding had they first sought summary judgment on the question whether the statements were defamatory. But the issue was not presented to the district court. Ms. Thomas and Mrs. Uribe chose, instead, to first seek dismissal at the outset based on their defense of absolute privilege. Whether the statements were defamatory as a matter of law could perhaps have been decided first by the district court. Ms. Thomas's and Mrs. Uribe's choices remind us somewhat of Judge Pickard's sage insight in *Gracia v. Bittner*, 120 N.M. 191, 192, 900 P.2d 351, 352 (Ct. App. 1995): "Every litigated case is tried at least three times: there is the trial the attorneys intended to conduct; there is the trial the attorneys actually conducted; and there is the trial that, after the verdict, the attorneys wished they had conducted."

**The Court Erred in Applying Absolute Privilege**

**{30}** The alleged defamatory statements of Ms. Thomas and Mrs. Uribe are not entitled to absolute-privilege protection. The statements were heard by news reporters who had been invited to hear the statements but who had no relationship to or interest in the judicial

12

proceeding.[3] To grant Ms. Thomas and Mrs. Uribe an absolute privilege in this case would be tantamount to unqualifiedly allowing defamatory statements by attorneys and parties to news reporters for dissemination to the general public as long as they could show that the content of the statements related to the subject matter of the judicial proceeding. In this case, the reasons for allowing absolute-privilege protection are significantly outweighed by the reasons militating against it. As the strong majority of cases portray under various rationales, more than a relationship of content to judicial proceeding had to exist.

{31}    In this case, the defamatory statements to invited news media for dissemination to the general public did not serve the purpose of the judicial proceeding, enhance its function, or legitimately achieve its objects. The statements did not assist attorneys in investigating claims or in fully presenting claims in court, which are the traditional reasons for applying absolute privilege. A not insignificant effect could have been to taint prospective jurors. Even given that the persons making the statements had in mind publication and dissemination for an educational purpose, the news media dissemination of the statements was not a necessary step in the investigation or presentation of claims and defenses. In weighing the value of reputation against the value of access to the court, in this case, the value of reputation far outweighed that of court access, because the publication of defamation by intended use of the news media was unnecessary and excessive. The courts have a duty to control the judicial process in such instances to limit the extent to which attorneys and parties are able, with impunity, to defame.

{32}    There exists enhanced risk of damage to reputation from employing the press for publication and dissemination of a defamatory statement. That enhanced risk exceeds the risk of damage that may occur when a news reporter might learn of the proceeding and develop sufficient interest to obtain from the clerk of the court a copy of a document filed in the court proceeding or sit in a court hearing. The judicial function will not be impaired by placing a limitation on application of the absolute-privilege defense in this case.

{33}    We hold that the absolute-privilege defense was erroneously allowed in the present case where the alleged defamatory statements were made to news reporters who had no relationship to or interest in the judicial proceeding. Thus, we hold that the district court

---

[3] At oral argument, Ms. Thomas's counsel stated that there was no evidence presented to the district court indicating that Ms. Thomas knew that the news reporter was invited to or present at the December 2007 meeting. This point was not raised in Ms. Thomas's answer brief, and her lawyers did not there or in oral argument indicate where Ms. Thomas raised this in the district court as a possible point to support her absolute-privilege defense. In oral argument, her counsel did not argue the contention as a basis on which we should uphold absolute privilege. We have not considered the contention.

erred in granting summary judgment in favor of Ms. Thomas and Mrs. Uribe on the ground of absolute privilege.

{34} We understand that a perceived need for application of absolute privilege in statements to the press stems from the concern that lawsuits with very thin or spurious grounds for asserting defamation claims will be filed for the purpose of intimidating parties and their attorneys who are simultaneously pursuing a lawsuit against the party asserting the defamation claims. Such lawsuits can be challenged in the district court on the merits, just as Ms. Thomas asked this Court to act on the merits of Helena's claims in the present action. Furthermore, qualified privilege and immunity, if the elements are provable, can adequately protect those making the alleged defamatory statements. *See* Paul T. Hayden, *Reconsidering the Litigator's Absolute Privilege to Defame*, 54 Ohio St. L.J. 985, 987 (1993) (advocating substitution of a qualified privilege for the absolute privilege for litigators). In addition, our decision today is a limiting factor in regard to retaliatory lawsuits brought to intimidate, since we are addressing only statements made by attorneys or parties to news reporters who have no interest in or connection with the judicial proceeding and who are invited to receive the statements for the purpose of dissemination to the public.

**CONCLUSION**

{35} We reverse the district court's grant of summary judgment in favor of Ms. Thomas and Mrs. Uribe based on absolute privilege, and remand for further proceedings.

{36} **IT IS SO ORDERED.**

---
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

---
**JAMES J. WECHSLER, Judge**

---
**MICHAEL E. VIGIL, Judge**

**Topic Index for *Helena Chem. Co. v. Uribe*, Docket No. 29,567**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |

**TR**                 **TORTS**

TR-DF            Defamation

TR-IM            Immunity